IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

**RICHARD DONNELL BRUCE**                          **PLAINTIFF**

**vs.**                                CIVIL ACTION NO. *12,0054-CI*

**3M COMPANY;**
**PANGBORN CORPORATION;**
**CLARK SAND COMPANY, INC.;**
**SOUTHERN SILICA OF LOUISIANA;**
**DEPENDABLE ABRASIVES, INC.;**
**PRECISION PACKAGING, INC.;**
**THE MORIE COMPANY N/K/A UNIMIN CORPORATION;**
**CUSTOM AGGREGATES AND GRINDING, INC.;**
**E. D. BULLARD COMPANY;**
**AMERICAN OPTICAL CORPORATION;**
**EMPIRE ABRASIVE EQUIPMENT CORPORATION;**
**EMPIRE ABRASIVE EQUIPMENT COMPANY, L.P.;**
**PFIZER, INC.;**                                          **FILED**
**CLEMCO INDUSTRIES, INC.;**
**SCHMIDT MANUFACTURING, INC.;**                  APR 12 2012
**BOB SCHMIDT, INC.;**
**PAULI & GRIFFIN COMPANY;**           SHELLY ASHLEY-PALMER TREE, CIRCUIT CLERK
**KELCO SALES & ENGINEERING COMPANY;**   BY_____D.C
**MINE SAFETY APPLIANCES COMPANY;**
**UNIMIN CORPORATION;**
**JOHN & JANE DOES 1 – 500, and**
**JOHN & JANE DOE CORPORATIONS 1-500, ET AL.**          **DEFENDANTS**

<u>**COMPLAINT**</u>

<u>**Jury Trial Requested**</u>

COMES NOW, Richard Donnell Bruce, hereinafter referred to as "Plaintiff," by

and through undersigned counsel, and files his Complaint against these Defendants and

would show the following to this Honorable Court in support thereof:

**I.**
<u>**PLAINTIFF**</u>

Plaintiff is a resident of Pattison, Mississippi. The Plaintiff's alleged injury is lung

disease and silica related conditions, caused by exposure to respirable crystalline silica



while working at Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

## II.
## DEFENDANTS

3M COMPANY F/K/A MINNESOTA MINING & MANUFACTURING COMPANY is a foreign corporation doing business in the State of Mississippi. This Defendant may be served with process by serving its registered agent, C.T. Corporation Systems, 645 Lakeland East, Suite 101, Flowood, Mississippi 39232. This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment (defective face masks, dust masks and/or respirators, and air supplied hoods) that was used in sandblasting and other manufacturing processes. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

PANGBORN CORPORATION is a foreign corporation that has done business in the State of Mississippi. This Defendant may be served with process by serving this Defendant's home office address or by serving process on, Joseph Camerata, President, 4630 Coates Drive, Fairburn, Georgia 30213. This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around silica. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

2

CLARK SAND COMPANY, INC. is a foreign corporation that has done and/or is doing business in the State of Mississippi. This Defendant may be served with process by serving this Defendant's registered agent:  c/o CT Corporation System, 1200 South Pine Island Road, Plantation, Florida 33324.   This is a Defendant that manufactured, marketed, distributed and sold silica sand used in sandblasting and other manufacturing processes, including foundry work, construction, etc. Plaintiff was exposed to defective and toxic silica sand manufactured, marketed, distributed or sold by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

SOUTHERN SILICA OF LOUISIANA is a corporation organized and existing under and by virtue of the laws of the State of Louisiana and doing business in the State of Mississippi.  Said defendant, therefore, may be served with summons by serving the registered agent: c/o CT Corporation System, 5615 Corporate Blvd., Suite 400B, Baton Rouge, Louisiana 70808. This is a Defendant that manufactured, marketed, distributed and sold silica sand used in sandblasting and other manufacturing processes. Plaintiff used defective and toxic silica sand manufactured and supplied by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

DEPENDABLE ABRASIVES, INC. is a Mississippi corporation and may be served with process and summons to its registered agent: James Dickerson, 215 Hopkins Drive, Biloxi, Mississippi 39530, or at 249 Hopkins Drive, Biloxi, Mississippi 39530.  This is a Defendant that manufactured, marketed, distributed and sold silica sand used in sandblasting and other manufacturing processes, including foundry work, construction, etc. Plaintiff was exposed to defective and toxic silica sand manufactured, marketed, distributed or sold by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

PRECISION PACKAGING, INC., is a foreign corporation doing business and with a principal office in Mississippi. This Defendant can be served with process by serving its registered agent, CT Corporation System at 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. This is a Defendant that manufactured, marketed, distributed and sold silica sand used in sandblasting and other manufacturing processes, including foundry work, construction, etc. Plaintiff was exposed to defective and toxic silica sand manufactured, marketed, distributed or sold by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

THE MORIE COMPANY n/k/a UNIMIN CORPORATION, is a foreign corporation doing business in the State of Kentucky. Said Defendant may therefore be served with process by serving The Morie Company c/o Unimin Corporation, 402b S. Wade Blvd., Millville, New Jersey 08332. This is a Defendant that manufactured, marketed, distributed and sold silica sand used in sandblasting and other manufacturing processes, including foundry work, construction, etc. Plaintiff was exposed to defective and toxic silica sand manufactured, marketed, distributed or sold by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

CUSTOM AGGREGATES AND GRINDING, INC., is a foreign corporation that has done business in the State of Mississippi. This Defendant may be served with process by serving its agent, A. Wayne Buras, 1000 Highway 190, Suite 103, Covington, Louisiana 70433.

4

This is a Defendant that manufactured, marketed, distributed and sold silica sand used in sandblasting and other manufacturing processes, including foundry work, construction, etc. Plaintiff was exposed to defective and toxic silica sand manufactured, marketed, distributed or sold by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

E. D. BULLARD COMPANY is a corporation organized and existing under and by virtue of the laws of the State of California and doing business in the State of Mississippi.  Said defendant, therefore, may be served with citation by serving the Registered Agent, to wit: The Corporation Trust Company, 1209 Orange Street, Wilmington, Delaware 19801, via certified mail. This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around silica. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

AMERICAN OPTICAL CORPORATION is a foreign corporation that has done business in the State of Mississippi. This Defendant may be served with process by serving its agent, c/o CT Corporation, 111 Eighth Avenue, New York, New York 10011. This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around silica. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

EMPIRE ABRASIVE EQUIPMENT CORPORATION is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania and maintaining its principal place of business in Pennsylvania. However, said defendant does not maintain either a regular place of business. Said defendant, therefore, may be served with citation by serving with process the Summons and copy of the Complaint to the Defendant's registered agent, to wit: Richard Woodfield c/o Marshall, Dennehey, Warner, Coleman & Goggin, 10 North Main Street, 2nd Floor, Doylestown, Pennsylvania 18901, via certified mail. This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around silica. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

EMPIRE ABRASIVE EQUIPMENT CORPORATION, L.P. is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania and maintaining its principal place of business in Pennsylvania. However, said defendant does not maintain either a regular place of business. Said defendant, therefore, may be served with citation by serving with process the Summons and copy of the Complaint to the Defendant's registered agent, to wit: Empire Abrasive Equipment Corporation, L.P., c/o Harry Hill, President, 2101 West Cabot Blvd., Langhorne, Pennsylvania 19047. Under information and belief this company is a successor in interest and/or responsible in part or in whole for the liability of Empire Abrasive Equipment Corporation. This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around silica. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

PFIZER, INC., is a foreign corporation that has done business in the State of Mississippi. This Defendant may be served with process by serving its registered agent, C. T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, Mississippi 39232. Plaintiffs would refer to the allegations against American Optical Corporation and adopt those allegations herein. In addition, Pfizer, Inc., is responsible for the liabilities of American Optical Corporation during the period of time that the company was owned by Warner-Lambert. During this time, Plaintiff used or worked around defective sandblasting or silica related equipment manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

CLEMCO INDUSTRIES, INC. is a corporation organized and existing under and by virtue of the laws of the State of Nevada and doing business in the State of Mississippi. Said defendant, therefore, may be served with citation by serving the a copy of the Complaint and Summons to its registered agent for process, to wit: Mark W. Cleary, 445 Bush Street, 9th Floor, San Francisco, California 94108, via certified mail. This is a Defendant that manufactured, marketed, distributed and sold defective sandblasting equipment and hoods that were used around silica, including sandblasting. Plaintiff used or worked around defective sandblasting or silica related equipment manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

SCHMIDT MANUFACTURING, INC. is a foreign corporation doing business in the State of Mississippi. This Defendant may be served with process by serving its registered agent, c/o CT Corporation, 350 North St. Paul Street, Dallas, Texas 75201. This is a Defendant that manufactured, marketed, distributed and sold defective sandblasting equipment that was used around silica, including sandblasting. Plaintiff used or worked around defective sandblasting or silica related

equipment manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

BOB SCHMIDT, INC. is a foreign corporation that has done business in the State of Mississippi. This Defendant may be served with process by serving Defendant's home office address, 603 Park Point Drive, Suite 200, Golden, CO 80401, or its President, Brian S. MacKenzie, 3011 South Birch Street, Denver, Colorado 80222; or its Vice-President and Director, Robert E. Joyce, Jr., 601 Corporate Circle, #150, Golden, Colorado 80401. This is a Defendant that manufactured, marketed, distributed and sold defective sandblasting equipment that was used around silica, including sandblasting. Plaintiff used or worked around defective sandblasting or silica related equipment manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

PAULI & GRIFFIN COMPANY is a foreign corporation that has done business in the State of Mississippi. This Defendant may be served with process by serving its registered agent, C. T. Corporation System, 350 North St. Paul Street, Dallas, Texas 75201 or 907 Cotting Lane Vacaville, California 95688. This is a Defendant that manufactured, marketed, distributed and sold defective sandblasting equipment that was used around silica, including sandblasting. Plaintiff used or worked around defective sandblasting or silica related equipment manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

KELCO SALES & ENGINEERING COMPANY, a division of POLLEY, INC., is a foreign corporation doing business in the State of Mississippi. This Defendant may be served with process by serving this Defendant's home office address, 11936 East Front Street, Norwalk, California 90650. This is a Defendant that manufactured, marketed, distributed and sold defective sandblasting equipment that was used around silica, including sandblasting. Plaintiff used or worked around defective sandblasting or silica related equipment manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

MINE SAFETY APPLIANCES COMPANY is a corporation organized and existing under and by virtue of the laws of the State of Pennsylvania and doing business in the State of Mississippi. However, said defendant does not maintain either a regular place of business or an agent for service of process in this state. Said defendant, therefore, may be served with citation by serving by serving the home office address: c/o Thomas B. Hottop, CEO, 1000 Cranberry Woods Drive, Cranberry Township, PA 16066, or c/o William M. Lambert, President, 1000 Cranberry Woods Drive, Cranberry Township, Pennsylvania 16066, via certified mail. This is a Defendant that manufactured, marketed, distributed and sold defective personal respiratory equipment that was used around silica. Plaintiff wore defective personal respiratory products manufactured by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

UNIMIN CORPORATION is a corporation organized and existing under and by virtue of the laws of the State of . Said defendant, therefore, may be served with summons by serving Unimin Corporation, c/o CT Corporation System, 645 Lakeland Drive East, Suite 101, Flowood, Mississippi 39232. This is a Defendant that manufactured, marketed, distributed and sold silica sand used in sandblasting and other manufacturing processes, including foundry

work, construction, etc. Plaintiff was exposed to defective and toxic silica sand manufactured, marketed, distributed or sold by this Defendant while working at the following:

- Marathon LeTourneau in Vicksburg, Mississippi from 2001-2002 in insulation department in close proximity to sandblasters; and

- Benders Shipyard in Mobile, Alabama from 2006-2009 as a sandblaster.

JOHN & JANE DOE DEFENDANTS 1-500 are Defendants whose identities are unknown at this time.  It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed silica containing products to the Plaintiff's work sites and the Plaintiff was exposed to said silica containing products or that these corporations and/or individuals manufactured, supplied, distributed products which caused silica containing products to become airborne, and the Plaintiff was exposed to said silica and/or these corporations and/or individuals which caused silica to become airborne, and the Plaintiff was exposed to said silica.  When their identities are known, his complaint will be amended to properly name same.

JOHN DOE CORPORATE DEFENDANTS 1-500 are Defendants whose identities are unknown at this time.  It is believed that these other corporations and/or individuals supplied, manufactured, and or distributed silica containing products to the Plaintiff's work sites and the Plaintiff was exposed to said silica containing products or that these corporations and/or individuals manufactured, supplied, distributed products which caused silica containing products to become airborne, and the Plaintiff was exposed to said silica and/or these corporations and/or individuals which caused silica to become airborne, and the Plaintiff was exposed to said silica.  When their identities are known, this complaint will be amended to properly name same.

## III.
## JURISDICTION

This Court has subject matter jurisdiction pursuant to Article 6 § 156 Mississippi Constitution 1890 and/or § 9-7-81 Mississippi Code 1972.  Plaintiff claims herein are brought solely under Mississippi law.  Plaintiff affirmatively states Plaintiff did not bring any claims for relief pursuant to any federal laws, statutes, or regulations.  Consequently,

this Court has jurisdiction and there is no arguable reason for the assertion of federal jurisdiction on the basis of a "federal question." Furthermore, the assertion by any Defendant of federal diversity jurisdiction would be improper in that Plaintiff is an adult resident citizen of the State of Mississippi and at least one of the Defendants is a Mississippi corporation in good standing. Consequently, "complete diversity" does not exist as is required for the assertion of federal diversity jurisdiction. In addition, upon information and belief, not all Defendants will agree or consent to removal of the referenced action to federal court and, therefore, any removal of this case is per se improper. Plaintiff formally puts all Defendants on notice that Plaintiff will seek all appropriate relief from any Defendant who removes this action without obtaining agreement or consent of all Defendants.

This Court has jurisdiction over all Defendants because they have done business in Mississippi, committed a tort in Mississippi and have had continuous contacts with Mississippi. Specifically, they have all sold, designed, manufactured, or marketed an array of defective silica related products in the State of Mississippi. Therefore, all Defendants are amenable to service by a Mississippi court. In addition, the damages for which Plaintiff brings suit exceed the minimal jurisdictional limits of the Mississippi State Court.

## IV.
### VENUE

Venue is proper in Warren County, Mississippi. See Sec. 11-11-3 Mississippi Code 1972. Specifically, this County is one in which the Plaintiff was exposed to or injured by silica and thus, this county is a location where an alleged act or omission occurred or where an event that caused the injury occurred. Alternatively, venue is proper

11

in this county as it is a county where Plaintiff purchased a defective product, a Defendant resides or has its principal place of business, or where the Plaintiff resides.

## V.
## FACTS

During all or part of the Plaintiff's working life, the Plaintiff worked with silica containing products, products that produce silica or products that cause the production of silica. While working with these products, Plaintiff wore devices and products that were marketed as "respiratory protection," allegedly designed to protect the Plaintiff and other workers from exposure to harmful airborne toxins, like silica. Additionally, Plaintiff worked with equipment that was represented to prevent or reduce their exposure to airborne toxins, like silica.

Plaintiff worked in various industries and trades that are known by the Defendants to result in increased exposures to silica. These trades may include, but are not limited to, abrasive blasting, construction, ship yards, and other heavy industries throughout the United States. Plaintiff's jobs and tasks required Plaintiff to engage in activities known by the Defendants to produce high levels of respirable silica or work in environments that contained high levels of respirable silica. These tasks may have included, but are not limited to, abrasive blasting, and raw materials handling. Plaintiff's jobs caused him to be exposed to silica from silica containing products, products that produce silica or products that cause the release of silica into the environment.

In addition to the products listed above, several Defendants mined manufactured, processed, packaged, sold and/or distributed materials containing silica sand. The Defendants mined the material, usually sand, through a dredging system and then pump the material in a liquid slurry to a processing facility. There, the material is screened and

filtered to remove impurities.   The sand is then dried and re-screened for size prior to packaging or sale to distributors or users of this material.

As a result, Plaintiff was exposed to silica from the use of these products or from working in close proximity to these products.   Plaintiff's exposure to silica has resulted in serious, permanent and irreversible damage to the Plaintiff.   As a result of the inhalation of silica, Plaintiff's lungs and body were injured.   Plaintiff's injuries resulted from repeated exposure to the products.   The nature of the injuries prevents detection, until years after the initial exposures.   This latent nature of the injuries and diseases prevents individuals such as the Plaintiff from discovering Plaintiff's injuries and/or illness for many years.   The illness has caused great disability and degraded Plaintiff's quality of life.   Plaintiff's conditions are incurable and progressive.   Ultimately, Plaintiff faces respiratory failure and a premature death.   In addition, Plaintiff has a fear of cancer resulting from Plaintiff's exposure to silica related products.

The Plaintiff was injured and damaged through the Defendants' manufacture, mining, sale and supplying of silica-containing products, the Defendants' manufacture, sale, rental and supply of defective respiratory equipment (respirators, non-air fed hoods, and air-fed hoods) used by the Plaintiff, and the Defendants' manufacture, sale, rental and supply of equipment (including, but not limited to, compressors, sand pots, sand hoppers, hoses, couplings, fittings, nozzles and guns) used by the Plaintiff and other devices manufactured, sold, rented and supplied by the Defendants' that were used by the Plaintiff.

Additionally, the Defendants sold non-air supplied hoods or other non-air supplied equipment that was purportedly adequate for operations with silica or which

Defendants knew were being used for such operations without warnings or with cautions, which were inadequate for the dangers involved in this operation. Further, Defendants sold masks and respirators, which were wholly inadequate and not approved for blasting operations or other operations with silica-containing products. These masks and respirators would not protect the workers from the dangerous silica and added to, and increased the risk of, exposure to these dangerous products. Even when air-supplied hoods and respirators were used, the Defendants sold non-approved air-supplied hoods or sold such hoods without adequate, intelligible and understandable warnings and instructions, which would ensure that the users would be under protected. These hoods were defective by reason of their design, marketing, and their foreseeable use or misuse. Thus, because of the negligence, design defects, and marketing defects (including using air fed hoods), the users were breathing contaminated air which contained dangerous levels of free silica and other toxic products of abrasive blasting, when used in their usual, customary, and expected way.

Additionally, some Defendants designed, manufactured and marketed after market parts intended to be sold and used as component parts with a variety of different air fed hoods. By selling these components these Defendants knew or should have known that the NIOSH approval on the air fed hoods would be voided and the safety of the products compromised. These after market parts were defective at the time they were introduced into the stream of commerce and such defect was a producing cause of Plaintiff's injuries and damages.

At no time prior to diagnosis did the Plaintiff know, or should have known, the nature of his injury, the cause of the injury or premature disability.  Defendants were

14

aware of the dangers of silica and failed to convey such dangers to Plaintiff or those similar to Plaintiff who has knowledge common to the community. Plaintiff discovered the disease or injury within the applicable period of limitations. Plaintiff timely brings this suit.

## VI.
## CAUSES OF ACTION AND THEORIES OF RECOVERY
## COUNT ONE – STRICT LIABILITY AND PRODUCT DEFECTS

The Defendants' products were defectively designed for their known and/or intended use. The products were unreasonably dangerous for their known and/or intended use. In addition, the defect or defects were present at the time the products in question were manufactured, fabricated and/or distributed. The defect or defects made the products unreasonably dangerous to those persons, such as Plaintiff, who could reasonably be expected to use and rely upon such products and those individuals working in the area or known zone of danger created by the products. As a result, the defect or defects were a producing cause of Plaintiff's injuries and damages. Therefore, the Defendants are liable under the Doctrine of Strict Liability in Tort.

The Defendants failed to give adequate and proper warnings with respect to the manner in which these products should be marketed, distributed and used. The Defendants knew or should have known that their products would be used in jobs, trades or industries that would expose individuals, such as the Plaintiff, to dangerous levels of respirable silica and therefore these Defendants should have warned persons like Plaintiff of the hazards and risks associated with the use of their product, including the danger of inhalation of respirable free silica. The Defendants failed to provide any such warnings

or instructions regarding the risks associated with use of their products and the failure to provide such warnings or instructions constitute a marketing defect, which was a producing cause of Plaintiff's injuries and damages.

## COUNT TWO - NEGLIGENCE

The Defendants were negligent including, but not limited to, the following particulars, each of which was a proximate cause of Plaintiff's injuries and damages:

- In failing to adequately warn Plaintiff of the hazards associated with the inhalation of silica and silica dust while using their products;

- In failing to properly test their products to determine adequacy and effectiveness or safety measures, if any, prior to releasing these products for consumer use;

- In failing to properly test their products to determine the levels of silica produced during the normal and/or intended use of the products;

- In failing to properly test their products to determine the zone of danger to co-workers, and other individuals working near users of their products;

- In failing to inform ultimate users, such as Plaintiff as to the safe and proper methods of handling and using their products;

- In failing to remove their products from the market when the Defendants knew or should have known their products were defective;

- In failing to instruct the ultimate users, such as Plaintiff as to the methods for reducing their exposure to silica, while using the products;

- In failing to inform the public in general and the Plaintiff in particular of the known dangers of breathing silica, even at levels below the government regulated levels;

- In failing to inform the users of their products of the dangers to co-workers, other workers in the area and individuals in the known zone of danger of the products;

- In failing to advise users how to prevent or reduce exposure to silica;

- In failing to warn that about the use of appropriate respiratory protection as a means of preventing or minimizing exposures to airborne free silica; and

- In designing, manufacturing, processing, packaging and/or distributing the products used by Plaintiff or in close proximity to the Plaintiff.

Each and all of these acts and omissions, taken singularly or in combination, were a proximate cause of the injuries and damages sustained by Plaintiff.

### COUNT THREE - BREACH OF WARRANTEES

The Defendants designed, manufactured, assembled, fabricated and/or distributed the products in question in a defective condition and therefore breached an implied warranty of fitness and an implied warranty of merchantability, in addition to various express warranties.  The Defendants, as sellers, were merchants with respect to the products which they sold.  In addition, these products were not fit for the ordinary purposes for which such goods are used.  The Defendants also had reason to know of the particular purpose for which these products would be used, as well as the knowledge that persons such as Plaintiff would rely on the seller's skill to furnish suitable products.

Therefore, the Defendants have breached the implied warranty of merchantability as well as the implied warranty of fitness for a particular purpose, in addition to various express warranties.  Such breach or breaches of implied and express warranties by the Defendants was a proximate cause of the injuries and damages sustained by Plaintiff.

### COUNT FOUR-CIVIL CONSPIRACY

17

All of the allegations contained in the previous paragraphs are re-alleged herein. Plaintiff further alleges that Defendants and/or their predecessors-in-interest knowingly agreed, contrived, combined, confederated and conspired among themselves to cause Plaintiff's injuries, disease, and illnesses by exposing Plaintiff to harmful and dangerous silica containing products, and/or defective equipment, and/or respiratory, protective wear. Defendants further knowingly agreed, contrived, confederated and conspired to deprive Plaintiff of the opportunity of informed free choice as to whether to use said products or to expose Plaintiff to said dangers. Defendants committed the above described wrongs by willfully misrepresenting and suppressing the truth as to the risks and dangers associated with the use of and exposure to Defendants' silica containing products, and/or equipment, and/or respiratory and protective wear, requiring or calling for the use of silica and/or silica containing particles.

In furtherance of said conspiracies, Defendants performed the following overt acts:

A.    For many decades, Defendants, individually, jointly, and in conspiracy with each other, have been in possession of medical and scientific data, literature and test reports which clearly indicated that inhalation of silica dust resulting from ordinary and foreseeable use of the above described products were unreasonable dangerous, hazardous, deleterious to human health, carcinogenic, and potentially deadly;

B.    Despite the medical and scientific data, literature, and test reports possessed by and available to Defendants, Defendants individually, jointly, and in conspiracy with each other, fraudulently, willfully and maliciously:

1.   withheld, concealed and suppressed said medical information regarding the  risks of silicosis, cancer, and other silicosis-related illnesses  from Plaintiffs who were using and being exposed to Defendants' products (as set out in the "Facts" section of this pleading)"

2.   caused to be released, published and disseminated medical and scientific data, literature, and test reports containing information and statements regarding the risks of silicosis, cancer, and other silicosis-related illnesses, which Defendants knew  were incorrect, incomplete, outdated, and misleading.

C. By these false and fraudulent representations, omissions, and concealments, Defendants intended to induce the Plaintiff to rely upon said false and fraudulent representations, omissions and concealments, and to continue to expose themselves to the dangers inherent in the use of and exposure to Defendants' products.

Plaintiff reasonably and in good faith relied upon the false and fraudulent representations, omissions, and concealments made by Defendants regarding the nature of their products. As a direct and proximate result of Plaintiff's reliance, Plaintiff has sustained damages including injuries, illnesses and disabilities and has been deprived of the opportunity of informed free choice in connection with the use of exposure to Defendants' silica containing products, and/or equipment, and/or respiratory and protective wear, requiring or calling for the use of silica and/or silica containing particles.

Specifically, at the end of 1935, the Air Industrial Hygiene Foundation ("IHF") was incorporated and included many of the Defendants throughout its existence. IHF

internally acknowledged it was a "creature of industry and is the one institution upon which employers can rely for a sympathetic appreciation of their viewpoint." Nonetheless, IHF outwardly presented itself as an unbiased group attempting to improve work conditions and began trying to shape occupational lung research and technical debate. IHF suggested a threshold safe exposure limit of 5 millions silica particles per cubic foot (mppcf) of air and presented it as a scientific and accurate standard. However, this was not true. In fact, IHF itself acknowledged that the 5-mppcf standard lacked entirely any published supporting data and was developed because it was about as low as then-modern engineering methods could achieve. Despite it maintaining the appearance of an unbiased group attempting to improve worker conditions, IHF was, in fact, promulgating an arbitrary, unscientific standard thereby attempting to avoid liability and promote a false sense of security.

In discussing the level of necessary exposure, IHF acknowledged that even industrial hygienists were lulled "into false security by reliance on the protection given by the strict adherence to these permissible limits." But rather then inform workers of the potential dangers, IHF members suggested that companies conduct "periodic physical evaluations" as a "biological check" for "concentrations of hazardous substances which had been sanctioned as being safe". They suggested that the very hazards of the job were effective devices for screening out workers whose physique left them susceptible to illness. They called this process "industrial selection" and endorsed the idea that those who are vulnerable to the exposure be weeded out by natural selection. This Darwinian/guinea pig approach was endorsed by the IHF and was never made public to the workers whom they represented they were trying to protect.

This effort to withhold the dangers of silica was acknowledged by the Bureau of Mines "Review of Literature" in 1950 in which it stated that silicosis was a widespread hazard that was probably increasing, that the standards were questionable and that there was an "apparently concerted effort to hide" the silicosis problem rather then publicize it to the workers and the general public. Despite IHF's knowledge of the dangers of silicosis, the knowledge of its representations and omissions and the knowledge of lack of scientific backing for its silica standards, the standard remained virtually untouched from 1935 through the mid-1960s. During this period, workers continued to get sick and industry believed it was safe from liability.

Eventually a broader discussion about silicosis emerged. In February of 1975 several Defendants gathered together in Houston, Texas and to form the Silica Safety Association ("SSA"). The SSA publicly stated that it was formed to investigate the potential health hazards of silicosis and recommend adequate protective measures. Clearly, SSA stated it was formed for safety as evidenced by name. Yet, the SSA's primary purpose was to make sure that the Occupational Safety and Health Administration ("OSHA") did not follow the National Institute for Occupational Safety and Health's ("NIOSH") recommendations to ban silica as an abrasive in blasting and to strengthen regulations on silica exposure. SSA's public argument was that workers had come down with silicosis because they "had no air-fed hoods". Privately, SSA withheld a study conducted in a plant owned by one of the officers of the SSA that "under conditions considered good work practice", nearly half of all air samples were above the accepted standards, indicating danger for the workers. While deceiving workers through withholding studies and intentionally misrepresenting itself as a safety organization, SSA

successfully prevented the promulgation of additional safety regulations and rules for workers which could have saved the health and lives of numerous workers.

Many of the Defendants have been members of the IHF and thus are liable as co-conspirators in actively making and/or supporting fraud, misrepresentation, intentional omissions and misinformation to silica workers. The Defendants and the years they were members of these organizations are as follows:

Clark Sand Company -- member of SSA

## COUNT FIVE - ACTING IN CONCERT

Additionally and/or alternatively, the Defendants aided and abetted each other in the negligence, gross negligence, and reckless misconduct. Pursuant to the Restatement (Second) of Torts Section 876, each of the Defendants is liable for the conduct of the other Defendants for whom they aided and abetting.

## COUNT SIX- GROSS NEGLIGENCE

Defendants' conduct was in conscious disregard for the rights, safety and welfare of the Plaintiff. Defendants acted with willful and wanton disregard for the Plaintiff. Defendants' conduct constitutes gross negligence. Defendants' gross negligence was a proximate cause of Plaintiff's injuries. Defendants are liable for exemplary and punitive damages.

## VII.
## DAMAGES

Plaintiff respectfully requests the following damages be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate Plaintiffs:

1.      Severe impairment to their lungs and respiratory system;

2.      Medical Expenses, past and future;
3.      Pain and Suffering, past and future;
4.      Mental Anguish, Anxiety, and Discomfort, past and future;
5.      Lost wages and income, past and future;
6.      Fear of Cancer or other silica related diseases;
7.      Physical Impairment;
8.      Physical Disfigurement;
9.      Loss of Enjoyment;
10.     Loss of Consortium;
11.     Pre and post judgment interest;
12.     Exemplary and Punitive Damages;
13.     Treble damages;
14.     Reasonable and necessary attorneys fees; and
15.     Such other relief to which Plaintiff may be justly entitled.

## VIII.
## DISCOVERY RULE

Plaintiff suffers from an occupational illness which has a latency period and does not arise until many years after first exposure to toxic dust.  Plaintiff's occupational illness did not distinctly manifest itself until Plaintiff was diagnosed with silicosis. Consequently, the discovery rule applies to this case and the statute of limitations has been tolled until the day that Plaintiff knew or had reason to know of Plaintiff's occupational illness.

## IX.
## CONDITIONS PRECEDENT

All conditions precedent have been performed or have occurred as required by the Mississippi Rules of Civil Procedure.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff demands judgment of and from the Defendants in an amount within the jurisdictional limits of this Honorable Court for compensatory damages against all Defendants, actual damages; consequential damages; exemplary damages, jointly and severally against all Defendants; interest on damages (pre-and post-judgment) in accordance with the law; Plaintiff's reasonable

23

attorney's fees, as well as costs of court and all other costs incurred; and such other and

further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED, this the 30 day of March, 2012.

JACK BETTIS, PLAINTIFF

BY: _____

PATRICK C. MALOUF

OF COUNSEL:

R. Allen Smith, Jr. – MSB #99984
THE SMITH LAW FIRM, PLLC
681 Towne Center Blvd., Suite B
Ridgeland, MS  39157
Telephone:  (601) 952-1422
Facsimile:  (601) 952-1426

Timothy W. Porter – MSB No. 9687
Patrick C. Malouf – MSB No. 9702
John T. Givens – MSB No. 101561
PORTER & MALOUF, P.A.
Post Office Box 12768
Jackson, MS 39236
Telephone:  (601) 957-1173
Facsimile:  (601) 957-7366